## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

JAMES J. TAPIA,

      Plaintiff,

v.                                        Civ. No. 19-463 GJF

ANDREW SAUL, *Commissioner of*
*Social Security*,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court upon Plaintiff's "Motion to Reverse and Remand for Rehearing, With Supporting Memorandum" [ECF 18] ("Motion").  The Motion is fully briefed. *See* ECFs 22 (Response), 23 (Reply).  Having meticulously reviewed the entire record and the parties' briefing, and for the reasons articulated below, the Court will **AFFIRM** the Commissioner's final decision, **DENY** Plaintiff's Motion, and **DISMISS WITH PREJUDICE** this case.

## I.   BACKGROUND

Plaintiff was born in 1975.  Administrative Record ("AR") 97.  She[1] completed three years of college, focusing on "physics with applied math."  AR 62.  Since 2004, she has worked in various information technology jobs, including as a web designer and computer support technician. AR 24, 360-368.  While Plaintiff was employed as a "remote support technician," her fibromyalgia and depression allegedly caused her to miss too many days of work.  AR 37-39, 361. Consequently, her employer "let [her] go" in April 2015.  AR 38.  She then applied for and received

---

[1] Pursuant to her briefing, "Plaintiff identifies as a female and prefers the use of feminine pronouns."  Mot. 1 n1. Furthermore, "[i]n 2019, Plaintiff legally changed her name to Sofia E. Winters."  *Id.*

unemployment insurance benefits for the next year.  AR 252-58.[2]  In March 2016, she applied for

social security disability benefits, claiming that as of March 2014 (at the age of 38) she had been

unable to work due to eight physical conditions[3] and eight mental conditions.[4]

In August 2016, the Social Security Administration (SSA) denied Plaintiff's claims,

finding her allegations "only partially credible" and concluding that she could "perform[] skilled

employment with limited social interactions."  AR 104, 107.[5]  Upon Plaintiff's request for

reconsideration, the SSA again denied her claims and concluded that she "retain[ed] the capacity

for semi-skilled light work."  AR 137.  Plaintiff then requested a hearing, which was held in

January 2018 before Administrative Law Judge ("ALJ") Raul Pardo.  AR 33, 180-81.  In June

2018, the ALJ concluded that Plaintiff could perform sufficient sedentary work and was not

disabled.  AR 20-25.  In March 2019, the Appeals Council denied Plaintiff's request to review the

ALJ's decision, after which Plaintiff timely petitioned this Court for relief.  AR 1; ECF 1.

## II.  PLAINTIFF'S CLAIMS

Plaintiff claims that the ALJ erred by not "consider[ing] properly" her statements, her

obesity, or a consultant's opinion.  Mot. 8-14.  In addition, Plaintiff claims that the ALJ erred at

---

[2] Plaintiff—having presumably represented that she was "able, available and actively seeking work"—received unemployment benefit payments from the second quarter of 2015 through the first quarter of 2016 (totaling $6,846). *See* AR 265; N.M. Stat. Ann. § 51-1-5(A)(3) (2019) (effective 1978); New Mexico Workforce Connection, "Additional Information About Unemployment Benefits," available at www.jobs.state.nm.us (last viewed Apr. 28, 2020) (informing applicants that they must be "*able, available and actively seeking work* to remain eligible for unemployment benefits *during each week in which [they] claim benefits*" (emphasis added)); *but cf.* AR 38-39 (Plaintiff testifying that, during this time, her fibromyalgia and depression prevented her from working).

[3] *I.e.*, obesity, high blood pressure, rapid heartbeats, prediabetes, "lower back [pain]," fibromyalgia, and "sleep apnea and trouble with sleeping."  AR 252, 351.

[4] *I.e.*, depressive disorder, social anxiety disorders, post-traumatic stress disorder, schizoid personality, suicidal thoughts, anxiety, stress, and gender identity disorder.  AR 351.

[5] This was the second time the SSA denied Plaintiff's application for disability benefits.  *See* AR 14, 74-95 (administrative law judge in March 2014 affirming the SSA's previous denial of Plaintiff's June 2011 disability application—concluding that, aside from some "nonexertional limitations," Plaintiff could "perform a full range of work at *all* exertional levels" (emphasis added)).

step five by not resolving a conflict between a vocational expert's testimony and the Dictionary of Occupational Titles ("DOT").  Mot. 14-16.

## III. APPLICABLE LAW

### A.  Standard of Review

The Court's review of an ALJ's decision is both legal and factual.  *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence." (citing  *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992))).

In determining whether the correct legal standards were applied, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005)).  The Court may reverse and remand if the ALJ failed to "apply correct legal standards" or "show . . . [he or she] has done so." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

The Commissioner's findings "as to any fact, if supported by substantial evidence, *shall* be conclusive." 42 U.S.C. § 405(g) (emphasis added).  "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (brackets in original) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "And . . . the threshold for such evidentiary sufficiency is not high.  Substantial evidence, [the Supreme] Court has said, is more than a mere scintilla." *Id.*  (internal quotation marks and citation

omitted).  "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

Under this standard, a court should still meticulously review the entire record, but it may not "reweigh the evidence nor substitute [its] judgment for that of the agency." *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004)); *Hamlin*, 365 F.3d at 1214.  Indeed, a court is to "review only the *sufficiency* of the evidence, not its weight." *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) (emphasis in original).  Therefore, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).  Furthermore, a court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200) (brackets omitted).

Ultimately, if the correct legal standards were applied and substantial evidence supports the ALJ's findings, the Commissioner's decision stands and Plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin*, 365 F.3d at 1214.

**B.  Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable to "engage in *any* substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (emphasis added).

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. § 404.1520).[6] The claimant bears the burden of proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 & n.5 (1987); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005); *Williams v. Bowen*, 844 F.2d 748, 750-51, 751 n.2 (10th Cir. 1988). In the first four steps, the claimant must show (1) that "[she] is not presently engaged in substantial gainful activity," (2) that "[she] has a medically severe impairment or combination of impairments," and either (3) that the impairment is equivalent to a listed impairment[7] or (4) that "the impairment or combination of impairments prevents [her] from performing [her] past work." *Williams*, 844 F.2d at 750-51; *Grogan*, 399 F.3d at 1261.

If the claimant has advanced through step four, the burden of proof then shifts to the Commissioner to show that the claimant nonetheless retains sufficient functional capacity "to perform other work in the national economy in view of [her] age, education, and work experience." *Yuckert*, 482 U.S. at 142, 146, n.5.

## IV. ALJ'S FINDINGS

In his June 2018 written decision, the ALJ affirmed that he carefully considered "all the evidence" and "the entire record." AR 35, 37.

---

[6] For the sake of brevity, the Court cites only to Part 404 of the Code of Federal Regulations (governing claims for disability insurance benefits) and not the parallel regulation in Part 416 (governing claims for Supplemental Security Income).

[7] If the claimant can show that she has a listed impairment, she will be found to be disabled and no further steps will be analyzed. 20 C.F.R. § 404.1520(a)(4)(i-iv). Otherwise, if no listed impairment can be shown, the analysis moves on to step four. *Id.*

### A. Steps One through Three

At step one, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since the alleged onset date of her disability. AR 16.[8] At step two, the ALJ found that Plaintiff had three physical impairments ("fibromyalgia, morbid obesity, and obstructive sleep apnea") and four mental impairments ("gender identity disorder, major depressive disorder, anxiety disorder, and post-traumatic stress disorder") that were "severe." AR 17.[9] In doing so, the ALJ specifically noted that Plaintiff's obesity qualified as "severe" because of its "exacerbating effect on other body systems and impairments." *Id.*

At step three, the ALJ found that no impairment or combination thereof satisfied the criteria of a listed impairment. AR 17. In doing so, the ALJ again addressed Plaintiff obesity, noting that Plaintiff testified at the hearing that she was 6'2" and weighed 385 pounds, resulting in a "body mass index of 49.4" or "extreme" obesity. *Id.* (citation omitted).[10] The ALJ also considered the "effects of [Plaintiff's] obesity . . . in combination with [her] other impairments." *Id.* Specifically, the ALJ found that Plaintiff's obesity "may contribute to chronic pain, obstructive sleep apnea, and hypertension." AR 18. Consequently, the ALJ had also "taken obesity into consideration with [Plaintiff's] other impairments" when assessing Plaintiff's "exertional and postural limitations set out in [the ALJ's] [RFC] finding." *Id.*

---

[8] At the hearing, when asked why—given that she was employed until April 2015—her "alleged [disability] onset date" was March 2014, Plaintiff requested that this date be "amended" to the date she stopped working (i.e., April 2015). AR 37-38. Plaintiff, however, did not ask that this date be amended to the date on which she stopped receiving unemployment benefits, March 2016. *See id.; supra* note 2 (observing that, in order to receive unemployment benefits, Plaintiff would have represented that she was "able, available and actively seeking work").

[9] The ALJ also found that Plaintiff had the non-severe impairments of "mild lumbar disc disease and hypertension." *Id.*

[10] Plaintiff also reported being 5'11" and 382 pounds in April 2015 and 6'3" and 406 pounds in April 2016. *Id.*

### B. Residual Functional Capacity

Before performing the step four analysis, in which the ALJ considers whether a claimant can perform past work, the ALJ must first determine the claimant's RFC.[11]  Here, the ALJ found that Plaintiff had the physical RFC to perform certain types of "sedentary work."  AR 20 (citation omitted).[12]  The ALJ also found that she had the mental RFC to "perform simple routine tasks," "have occasional contact with coworkers and the public," and "should work primarily with things rather than people."  *Id.*  As described below, the ALJ discussed the evidence and reasoning that led to these RFC findings.

#### 1. Plaintiff's Allegations

The ALJ began by reviewing Plaintiff's testimony that (1) physically, she could only "sit for 30 minutes to an hour," "stand five minutes while leaning on something," "walk 30 to 50 feet," and "lift and carry five to 10 pounds" and (2) mentally, "[her] anxiety and depression make it difficult to talk to people."  AR 21 (also noting Plaintiff's general comment that "[her] weight makes it harder on [her] body to move, makes medications less effective, and contributes to depression").  As discussed below, however, the ALJ found that Plaintiff's statements about the limiting effects of her symptoms were "not entirely consistent with the medical evidence and other evidence in the record."  AR 21.

#### 2. ALJ's Assessment

Regarding the physical RFC findings, the ALJ gave "some weight" to the opinions of the "non-examining state agency medical consultants," both of whom found that—despite Plaintiff's

---

[11] *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity."); *but cf. Winfrey*, 92 F.3d at 1023 (describing the RFC determination as technically the first part of step four).

[12] Specifically, the ALJ found that Plaintiff could "perform sedentary work . . . except [she] can reach frequently and handle frequently bilaterally; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance and stoop; [and] can have no more than occasional exposure to unprotected heights."  *Id.*

obesity and other limitations—she had the capacity for "a range of light work with postural limitations." AR 23. The ALJ also found that Plaintiff had the capacity to work, but in light of her testimony and subsequent evidence, the ALJ limited her to a range of sedentary work. *Id.* In making such a finding, the ALJ observed that Plaintiff "engages in a fairly wide range of activities of daily living"—including household chores, cooking meals, driving a car, shopping, "perform[ing] personal care without assistance," "playing a tabletop role playing game with five people," watching movies, playing videogames, and chatting online. AR 23-24. The ALJ also noted that "the rheumatologist who diagnosed [fibromyalgia] in 2012 recommended exercise as a primary treatment"—but that "[Plaintiff] has not followed this advice." AR 22.[13] In addition, the ALJ observed that Plaintiff had "been using a CPAP machine during sleep with reportedly good results" and that her sleepiness was sometimes "a side effect of medication." AR 18, 21.

Regarding the mental RFC findings, the ALJ gave "significant weight" to the opinions of the "non-examining state agency psychological consultants." AR 23. The ALJ noted that one consultant, Renate Wewerka, Ph.D., found that Plaintiff was capable of "skilled employment with limited social interactions." AR 23. The other consultant, Randy Cochran, Psy.D., similarly found that Plaintiff could perform "simple and some complex tasks with routine supervision," "relate to supervisors and peers on a superficial work basis, with limited public contact," and "adapt to a work environment." *Id.* The ALJ also considered Plaintiff's testimony that, "once a week for three to four hours," she "plays a tabletop role playing game with five people [she] has known for four or five years . . . . and then [they] have dinner afterwards." *Id.* In addition, he reviewed a report of Plaintiff's partner, with whom Plaintiff had lived for six years, who stated that Plaintiff

---

[13] Although Plaintiff provided no record of having the required "tender points" for fibromyalgia, the ALJ gave her "the benefit of the doubt" by at least "accept[ing] fibromyalgia as a medically determinable severe impairment"— given that she been treated for that diagnosis for several years. AR 18, 22.

watched anime "mostly with close friends" and "text chatted on the computer and voice chatted with loved ones daily." AR 23-24. Furthermore, the ALJ observed that Plaintiff's "anxiety and depression have been treated with medication and [she] has not required inpatient mental health care." AR 21; *see also* AR 22 -23 (ALJ citing a 2017 report from Plaintiff's psychiatrist, noting "good social skills and reactivity of affect, albeit constricted" and a 2017 report from Plaintiff's primary care physician, noting Plaintiff's mood was "generally okay" and that she felt her new dose of antidepressant medication was working better).

### C. Steps Four and Five

At step four, given the RFC described above, the ALJ found that Plaintiff was unable to perform her past relevant work. AR 24. At step five, however, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." AR 25. In doing so, the ALJ considered the vocational expert's testimony that Plaintiff could "perform the requirements of representative occupations"—including the jobs of "production worker/final assembler" (25,600 jobs nationally), "addresser" (17,250 jobs nationally), and "document preparer" (35,670 jobs nationally)—and found this testimony to be consistent with the DOT. *Id.*[14] Consequently, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act." *Id.*

---

[14] *See also id.* (citing DOT at ¶¶ 209.587-010, 249.587-018, 713.687-018 (classifying the production worker/final assembler job as requiring level-one reasoning, the addresser job as level-two, and the document preparer job as level-three)); *infra* Section V(B) (further discussing level-three reasoning).

## V.  ANALYSIS

### A.  The ALJ Did Not Err in Weighing or Discussing the Evidence

As discussed below, the ALJ did not err in weighing or discussing Plaintiff's statements, Plaintiff's obesity, or Dr. Cochran's opinion.

#### 1.  The ALJ Did Not Err in Discounting Plaintiff's Statements

Plaintiff asserts that her statements were consistent with the evidence and argues that the ALJ should have therefore given her statements more weight.  Mot. 12-14.  This Court disagrees.

While a claimant's "statements about [his or her] pain or other symptoms will not alone establish" an impairment or disability, such statements cannot be disregarded "solely because the available objective medical evidence does not substantiate [the claimant's] statements." 20 C.F.R. § 404.1529(a), (c)(2); SSR 16-3p, 81 Fed. Reg. 14166, 14169 (Mar. 16, 2016).  In addition, the ALJ's decision must contain "specific reasons for the weight given to the [claimant's] symptoms" and "be consistent with and supported by the evidence."  *Id.*  In reviewing such reasons and evidence, however, the Court "neither reweigh[s] the evidence nor substitute [its] judgment for that of the agency."  *Newbold*, 718 F.3d at 1262.

In discounting Plaintiff's statements about the limiting effects of her symptoms, the ALJ provided "specific reasons" that were "consistent with and supported by the evidence."  SSR 16-3p.  Specifically, in concluding that Plaintiff's statements were not "entirely consistent" with the evidence, the ALJ expressly relied, *inter alia*, on the following: (1) the opinion testimony of *four* state agency consultants (two physicians and two psychologists), all of whom found that Plaintiff had the capacity to work; (2) Plaintiff's "fairly wide range of activities of daily living," which, the ALJ observed,  "suggest[ed] the ability to perform a range of sedentary work;" (3) that Plaintiff's "anxiety and depression have been treated with medication and [she] has not required inpatient

mental health care;" (4) Plaintiff's rheumatologist recommending "exercise as a primary treatment;" (5) Plaintiff's psychiatrist finding that Plaintiff exhibited "good social skills;" and (6) Plaintiff's primary care physician noting that Plaintiff manifested a "generally okay" mood.  AR 21-24.  Given these specific and well-supported reasons for treating Plaintiff's statements as not "entirely consistent" with the evidence, the Court holds that the ALJ did not err in discounting Plaintiff's statements.[15]

### 2. The ALJ Did Not Err in Addressing Plaintiff's Obesity

Plaintiff also argues that the ALJ did not comply with the requirement to "explain how [he] reached [his] conclusion on whether obesity causes any limitations."  Mot. 8-11 (quoting SSR 02-1p, 67 Fed. Reg. 57859, 57863 (Sept. 12, 2002)).  This Court disagrees.

When assessing a claimant's RFC, the ALJ must consider the limiting effects of obesity and—"[a]s with any other impairment"—"explain how [he] reached [his] conclusion on whether obesity causes any limitations."  SSR 02-1p, 67 Fed. Reg. at 57863.[16]  In addressing this requirement, the Tenth Circuit has "held that there was no error where, among other things, the ALJ discussed the 'possible ramifications' of the claimant's obesity."  *Johnson v. Comm'r, SSA*, 764 Fed. Appx. 754, 759 (10th Cir. 2019) (unpublished) (quoting *Howard v. Barnhart*, 379 F.3d

---

[15] To the extent "[Plaintiff's contentions amount to an argument that this [C]ourt should reweigh the evidence," this Court cannot do so.  *Hendron v. Colvin*, 767 F.3d 951, 956 (10th Cir. 2014) (citing *Oldham*, 509 F.3d at 1257)).  Plaintiff also suggests that the ALJ did not "properly consider" the seven factors for evaluating a claimant's symptoms, but Plaintiff never identifies what factor or factors were supposedly *improperly* considered—or how they should have otherwise been considered.  *See* Mot. 13-14; SSR 16-3p (listing the seven factors but only requiring the ALJ to "discuss the factors pertinent to the evidence of record").  Consequently, the Court declines to address this argument.  *See* D.N.M. LR-Civ 7.1(a) (requiring a motion to "state *with particularity* the grounds and the relief sought" (emphasis added)); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (only considering issues "that have been adequately briefed for [the court's] review").

[16] SSR 02-1p, which was in effect at the time of the ALJ's decision, has since been superseded, but this requirement has not changed.  *See* SSR 19-2p, 84 Fed. Reg. 22924, 22925 (May 20, 2019) (also stating that—"[a]s with any other impairment"—the ALJ must "consider the limiting effects of obesity when assessing a person's RFC" and then "explain how [he] reached [his] conclusion on whether obesity causes any limitations").

945, 948 (10th Cir. 2004)).  Furthermore, an ALJ may "discuss [the] possible ramifications of [a claimant's] obesity" by addressing *other* impairments, such as a claimant's pain.  *Howard*, 379 F.3d at 948 (also noting that a consultative medical report "took into account claimant's obesity" and "supported the ALJ's RFC determination"); *see also Razo v. Colvin*, 663 Fed. Appx. 710, 716 (10th Cir. 2016) (unpublished) (observing that "[t]he ramifications of obesity [were] subsumed within the discussion of [claimant's] other medical conditions").  Consequently, an ALJ is not required to discuss how obesity interacts with "each piece of evidence the ALJ discussed in formulating [his] RFC," *Smith v. Colvin*, 625 Fed. Appx. 896, 899 (10th Cir. 2015) (unpublished), especially when the claimant "does not discuss or cite to medical or other evidence to support [her] claim that [her] obesity was disabling." *Razo*, 663 Fed. Appx. at 716 (citing *Howard*, 379 F.3d at 948).

The ALJ complied with the requirement to "explain how [he] reached [his] conclusion on whether obesity causes any limitations."  SSR 02-1p.  Specifically, he discussed the "possible ramifications" of Plaintiff's obesity by first finding that it had an "exacerbating effect on [her] other body systems and impairments"—including by potentially "contribut[ing] to chronic pain, obstructive sleep apnea, and hypertension."  AR 17-18.  Furthermore, "[t]he ramifications of obesity [were] subsumed within the [ALJ's] discussion of [Plaintiff's] other medical conditions," *Razo*, 663 Fed. Appx. at 716, including his discussion of Plaintiff's fibromyalgia, chronic pain, sleep apnea, and anxiety and depression.  *See* AR 17-18, 20-22 (ALJ noting, *inter alia*, no documentation of "tender points" for fibromyalgia, the medications used to treat Plaintiff's chronic pain, "good results" with the CPAP machine, and "anxiety and depression hav[ing] been treated with medication").  In addition, the ALJ relied on at least three medical reports and four medical opinions, all of which "took into account claimant's obesity" and "supported the ALJ's RFC

determination." *Howard*, 379 F.3d at 948; AR 22-23, 102-07, 137-43, 1090-99.  Finally, aside from perhaps her own statements—which the ALJ thoroughly addressed, *see* AR 20-21—Plaintiff "does not discuss or cite to medical or other evidence to support [her] claim that [her] obesity was *disabling*."  *Razo*, 663 Fed. Appx. at 716 (emphasis added); *see* Mot. 8-11; AR 17-24. Consequently, the Court holds that the ALJ did not err in addressing Plaintiff's obesity.

### 3.  *The ALJ Did Not Err in Weighing Dr. Cochran's Opinion*

Plaintiff next argues that the ALJ erred when he gave "significant weight" to Dr. Cochran's opinion—but did not expressly include in his RFC finding the portion of Dr. Cochran's opinion that stated Plaintiff could "relat[e] to supervisors on a superficial work basis," or provide an explanation for such an omission.  Mot. 11-12.  This Court disagrees.

"If the RFC assessment *conflicts* with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  SSR 96-8p, 61 Fed. Reg. 34474, 34478 (Jul. 2, 1996) (emphasis added).  Nevertheless, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."  *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (also noting that "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record" (quoting *Howard*, 379 F.3d at 949)).  In discussing the weight given to a medical opinion, if "[t]he ALJ provided *good reasons*"—e.g., by making clear both "the weight" given and "the reasons for that weight"—then "[n]othing more was required."  *Oldham*, 509 F.3d at 1258 (emphasis added) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (citing 20 C.F.R. § 404.1527(c)(2)).

This Court holds that the ALJ did not err in weighing Dr. Cochran's opinion.  First, there was no *conflict* between the ALJ's RFC assessment and the portion of Dr. Cochran's opinion that

states that Plaintiff can "superficially" relate to supervisors.  Specifically, the ALJ found that Plaintiff had the mental RFC to "perform *simple routine* tasks," "have *occasional contact* with coworkers and the public," and "should *work primarily with things rather than people*."  AR 20 (emphasis added).  And such a finding, while not specifically mentioning supervisors, clearly implies limited (i.e., "superficial") interaction with others—including supervisors—and restricts Plaintiff to work that does not require extensive supervision (i.e., the "simple routine" kind that involves "primarily things rather than people").  *Id.*  Thus, although the ALJ's RFC finding and this portion of Dr. Cochran's opinion may not be *identical*, they do not *conflict* with each other— and "there is no requirement . . . for a *direct correspondence* between [such] an RFC finding and [Dr. Cochran's] specific medical opinion."  *Chapo*, 682 F.3d at 1291 (emphasis added).  Second, the ALJ did discuss Dr. Cochran's opinion, including the statement about relating "superficially" to supervisors, and provided "good reasons" for the weight he gave to Dr. Cochran's opinion.  AR 23.  Consequently, this Court holds that "[n]othing more was required."  *Oldham*, 509 F.3d at 1258.

### B.  The ALJ Committed Harmless Error at Step Five

Plaintiff argues that the ALJ committed reversible error at step five by not resolving a conflict between (1) the DOT's description of the "document preparer" job as requiring level-three reasoning[17] and (2) the vocational expert's testimony that Plaintiff could perform such a job while limited to "perform[ing] simple routine tasks."  Mot. 14-16; Reply 2-3.  The Court concludes, however, that the ALJ's error was harmless.

---

[17] "'[A] reasoning level of three [is] defined as the ability to 'apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form, and deal with problems involving several concrete variables in or from standardized situations.'"  *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (quoting DOT, Vol. II (also noting that such ratings help to measure "those aspects of education (formal and informal) which are required of the worker for satisfactory job performance")).

### 1.  *Applicable Legal Standards*

An "ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary [of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999); *see also Poppa v. Astrue*, 569 F.3d 1167, 1173 (10th Cir. 2009) (noting that an ALJ must resolve any conflicts between the description of a job in the DOT and the vocational expert's testimony about that job (citing SSR 00-4p, 65 Fed. Reg. 75759, 75760 (Dec. 4, 2000)).  The Tenth Circuit has held that a description of a job in the DOT that included level-three reasoning "*seem[ed]* inconsistent" with the vocational expert's testimony that such job could be performed by someone limited to "simple and routine work tasks." *Hackett*, 395 F.3d at 1176 (emphasis added) (citation omitted).[18]

The principle of harmless error "specifically applie[s] . . . in social security disability cases." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (citations omitted).  Consequently, "[a]ssuming there was a conflict between the [vocational expert's] testimony and the DOT, the ALJ's failure to resolve the alleged conflict [is] harmless error" when the non-conflicting jobs "exist in significant numbers" and "no reasonable factfinder" could have found otherwise. *Anderson v. Colvin*, 514 F. Appx. 756, 764 (10th Cir. 2013) (unpublished) (citing *Allen*, 357 F.3d at 1145); *see also* 42 U.S.C. § 423(d)(2)(A) (stating that a claimant is not disabled if he can engage

---

[18] In a later (unpublished) opinion, the Tenth Circuit suggested in dicta that the reasoning level of a job might not correspond to whether the job is skilled or unskilled.  *See Anderson v. Colvin*, 514 Fed. Appx. 756, 764 (10th Cir. 2013) (unpublished) (noting that such ratings "do[] not describe specific mental or skill requirements of a particular job, but rather describe[] the *general educational background* that makes an individual suitable for the job" (citing DOT, Vol. II, App. C, III (emphasis added)).

in "work that exists in significant numbers" in the "national economy"). Thus, in finding such an error to be harmless, a court must therefore "hold *as a matter of law*" that the number of jobs is "so large a number as to conclusively establish the requisite numerical significance." *Allen*, 357 F.3d at 1144-45 (emphasis in original).

In determining whether work "exists in significant numbers," it does not matter whether "[w]ork exists in the immediate area," "[a] specific job vacancy exists," or "[the claimant] would be hired if [he or she] applied." 20 C.F.R. § 404.1566(a). If, however, the work consists of only "*[i]solated* jobs that exist only in *very limited numbers* in *relatively few locations*," then the work does not exist in significant numbers. § 404.1566(b) (emphasis added); 42 U.S.C. § 423(d)(2)(A). The Tenth Circuit has "never drawn a bright line establishing the number of jobs necessary to constitute a 'significant number.'" *Raymond v. Astrue*, 621 F.3d 1269, 1274 & n.2 (10th Cir. 2009) (quoting *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992)) (also noting its previous finding that "152,000 jobs in the national economy [was] sufficient" (citing *Stokes v. Astrue*, 274 F. Appx. 675, 684 (10th Cir. 2008) (unpublished)). The Tenth Circuit has "implied that 11,000 national jobs was a significant number." *Evans v. Colvin*, 640 F. Appx. 731, 735 (10th Cir. 2016) (unpublished) (citing *Rogers v. Astrue*, 312 F. Appx. 138, 142 (10th Cir. 2009) (unpublished) (concluding, in affirming a denial of attorney fees, that "the Commissioner was substantially justified in arguing that 18,831 remaining jobs in the national economy was sufficient for applying harmless error")). In addition, the Ninth Circuit has specifically found that "25,000 jobs meets the statutory standard." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528-29 (9th Cir. 2014) (also noting the Eighth Circuit's finding that "10,000 national jobs [was] significant" (citing *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997)).[19]

---

[19] *See also King v. Berryhill*, No. 16-1147 KBM, 2018 U.S. Dist. LEXIS 23706, 2018 WL 851358, *12-14 (D.N.M. Feb. 12, 2018) (47,500 jobs significant); *Padilla v. Berryhill*, No. 16-106 KK, 2017 U.S. Dist. LEXIS 45057, 2017

2. *Analysis*

As a preliminary matter, the Court is not certain that the DOT's description of the "document preparer" job as requiring level-three reasoning actually conflicts with the vocational expert's testimony that such a job could be performed by someone limited to "perform[ing] simple routine tasks." AR 20; *see Hackett*, 395 F.3d at 1176 (finding that these two items only "seemed" inconsistent); *but cf. Anderson*, 514 Fed. Appx. at 764 (noting that the DOT reasoning levels "do[] not describe specific mental or skill requirements of a particular job, but rather describe[] the general educational background that makes an individual suitable for the job")).

Nevertheless, even assuming there was such a conflict, the ALJ would have committed harmless error by not addressing it. Given that the Tenth Circuit has "implied that 11,000 national jobs was a significant number," *Evans*, 640 F. Appx. 731, and that the Ninth Circuit has concluded that "25,000 jobs meets the statutory standard," *Gutierrez*, 740 F.3d at 528-29, the Court finds that the 42,850 remaining jobs[20] are not "[i]solated jobs that exist only in *very limited numbers*." 20 C.F.R. § 404.1566(b) (emphasis added). Instead, the Court holds as a matter of law that these 42,850 jobs—almost four times the Tenth Circuit's implicit finding and nearly double the Ninth Circuit's explicit finding—are sufficiently large to "conclusively establish the requisite numerical significance." *Allen*, 357 F.3d at 1144. Consequently, the Court holds that "the ALJ's failure to resolve the alleged conflict [is] harmless error." *Anderson*, 514 F. Appx. at 764.

---

WL 3412089, at *11 (D.N.M. Mar. 28, 2017) (27,000 jobs significant); *but cf. Romero v. Saul*, No. 19-92 JHR, 2020 U.S. Dist. LEXIS 61372, 2020 WL 1677074, at *4-8 (D.N.M. Apr. 6, 2020) (declining to hold that the number of jobs is "'significant' as a matter of law" whenever "fewer than 152,000 national jobs" are identified).

[20] *I.e.*, 17,250 jobs for addresser and 25,600 for production worker.

## VI.  CONCLUSION

For the foregoing reasons, the Court holds that the ALJ applied the correct legal standards and that his findings and decision were supported by substantial evidence.

**IT IS THEREFORE ORDERED** that the Commissioner's final decision is **AFFIRMED**, that Plaintiff's Motion is **DENIED**, and that this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
***Presiding by Consent***

18